JOHN V. N. YATES, plaintiff in error, *v.* LANSING, defendant in error.

In Ct. of E. 9 J. R. 394–442.   In S. Ct. 5 J. R. 282–299.

*Action against Judicial Officer for re-committing Prisoner Discharged on Habeas Corpus, to recover penalty under Statute ; Liability of Judge for Judicial Act ; Power of Court of Chancery to Punish Contempt, &c., and to re-commit Prisoner, &c.*

THIS was an action of debt, brought against the defendant, Chancellor of the state, to recover the penalty of $1,250, under the 5th section of the *habeas corpus* act, which declares " that no person who shall be set at large upon any *habeas corpus,* shall be again imprisoned for the same offence, unless by the legal order or process of the court, wherein he is bound by recognizance to appear, or other court having jurisdiction of the cause ; and that if any person shall knowingly, contrary to this act, re-commit or imprison, or cause to be re-committed or imprisoned, for the same offence, any person so set at large, or shall knowingly aid or assist therein, he shall forfeit to the party aggrieved, $1,250, any colorable pretence or variation in the warrant of commitment, notwithstanding." 1 R. L. of 1813, p. 355.

The action was, of course, founded upon the acts of the defendant, Lansing, as Chancellor, set forth in the preceding case just given, and it is hardly necessary to the understanding of the issues made, to do more than refer to that case without more particularly stating the pleadings. The plaintiff's declaration set them forth, and the defendant justified the acts as done in his judicial capacity as Chancellor ; to which there was a general demurrer and joinder.

The argument of the cause was merely *pro forma,* in the Supreme Court ; though Kent, Ch. J., urged the argument of the point, as one " of very great importance, which was

not argued or decided in the case of Mr. Yates, on the *habeas corpus ;* viz., whether the Chancellor while acting officially and judicially, is responsible, in this action, for what he has done as Chancellor?" Mr. Emmet, however, of counsel for the plaintiff, declined to argue it, intimating that a writ of error was to be brought. The court, very properly, took time to consider it, and held that the action would not lie.

Kent, Ch. J., delivered an opinion with which Thompson, J., and Van Ness, J., concurred—to the effect—that " the penalty for which the suit was brought is imposed on individuals, acting *ministerially out of court,* and does not apply to the acts of a court done of record. " The Chancellor and judges may refuse such a writ, in their discretion, if applied for in term time, and the penalty will not attach. It is only when they refuse in a mere ministerial capacity, to allow the writ, that they are made responsible. The allowance of a writ in vacation, is not a judicial act." Per Kent, Ch. J., p. 295.

" Judicial exercise of power is imposed upon the courts. They *must* decide and act according to their judgment, and therefore the law will protect them. The Chancellor may possibly have erred in judgment, in calling an act a contempt which did not amount to one, and in regarding a discharge as null, when it was binding. This court may have erred in the same way; still it was but an error of judgment, for which neither the Chancellor nor the judges of this court, are or can be held responsible in a civil suit. Such responsibility would be an anomaly in jurisprudence. No statute could have intended such atrocious oppression and injustice."*

---

* But now by the *Rev. Stat.,* the *courts* authorized to give writs of *habeas corpus,* are expressly included in the penalty even when sitting and acting judicially, and can no more refuse to grant it than a judge out of court. 2 R. S. 566, 1st. Ed. § 31. " If any *court* or *officer,* authorized by the provisions of this article to grant writs of *habeas corpus* or *certiorari,* shall refuse to grant such writ *when legally applied for,* every member of such court who shall have assented to such refusal, and every such officer, shall severally forfeit to the party aggrieved, 1,000 dollars."

Spencer, J., delivered a brief opinion as follows: "The decision of the court at the last August term, in the matter of John V. N. Yates, entitles the defendant to judgment on the demurrer. A majority of this court held that the re-commitment of the plaintiff, after he had been set at large on *habeas corpus*, was a legal and justifiable act. I have not thought it necessary to examine the other point in this cause, with a view to deliver an opinion on it; but I have so far considered it, as to be unable to subscribe to several positions in the opinion just delivered; I must therefore be considered as giving no opinion on that point."

Judgment being thus given for the defendant, the plaintiff brought error.

The Court of Errors affirmed the judgment of the Supreme Court.

The opinion in favor of affirmance was delivered by Platt, senator, shortly after made a justice of the Supreme Court, and that for reversal by Clinton, senator.

Platt, S., says: "Before I proceed to examine the questions in the case, it is proper to notice a preliminary objection insisted on by the counsel for Mr. Yates. They contend that the door to those inquiries is now shut by the decision of this court, at its last session, in the case of *John V. N. Yates* v. *The People*.

"I can not admit the doctrine of *immutability* in the decisions of this court to the unqualified extent claimed by the plaintiff's counsel."

"The decisions of the courts are not *the law;* they are *only evidence of the law.* And this evidence is stronger or weaker according to the number and uniformity of adjudication, the unanimity or discretion of the judges, the solidity of the reasons on which the decisions are founded, and the perspicuity and precision with which those reasons are expressed. The weight and authority of judicial decisions depend also on the character and temper of the times in which they are pronounced. An adjudication at a moment when turbulent passions or revolutionary phrenzies prevail, deserves much less respect, than if it were made at a season more propitious to impartial inquiry, and calm deliberation."

He then contends that, as even in the Supreme Court,

where the judges confer together, and in the courts of West-minster Hall, the judges who silently acquiesce in the result, do not consider themselves bound to recognize as law all the *dicta* of the judge who delivers the opinion of the court; still less ought those *dicta* of a single member to bind the majority of that Court (of Errors,) who acquiesce in the *result* of such opinion.

Upon the question of committing by an *order* of the Court instead of a writ or warrant, he says:

" This suit is for the penalty for re-committing after a discharge on *habeas corpus ;* and the question is not as to the *mode,* but as to the *right* of re-committing. If the re-com-mitment was " *knowingly,* contrary to the statute," it is im-material whether it was by *order* or by *attachment ;* for the defendant is equally liable in both cases."

"If that question were material in this case, it might be shown that *courts of record* may commit by *order* or by *writ ;* but a magistrate, not sitting as a court of record, can commit only by *warrant,* under his hand and seal. 2 Hale's P. C. 122; 2 Roll. Abr. 559, *Taylor* v. *Beal.*

On the point of the nullity of the *order,* in consequence of its stating an offence " *against the statute,*" he says:

" A contempt is an offence *against the court,* as an organ of public justice, and the court can rightfully punish it on summary conviction, whether the same act be punishable as a crime or misdemeanor, or not. A conviction on indictment will not purge the contempt, nor will a conviction for a con-tempt be a bar to an indictment.

" I am of opinion that the order is clearly a conviction for a *contempt,* and in legal construction, nothing more. The words, " contrary to the statute, in wilful violation of his duty as master, and in contempt of the authority of this court," in the connection in which they stand, are mere *ex-pletives,* showing a strong sense of the indignity offered to the court: but are not a substantive ground of conviction. If those words had been omitted, the conviction would have been complete ; and I think its legal import is the same *with* or *without* those words."

" It is contended that the attachment is illegal, being on

conviction without an examination or interrogatories. To this several answers may be given.

1. "It does not appear upon the attachment, whether it was so or not.

2. "If we recur to the conviction or order for the attachment, it appears that Mr. Yates refused to answer the complaint, "although regularly required so to do," and I think such refusal to answer, is not only a waiver of the right of being examined on interrogatories; but an admission that the complaint was well founded." (☞ Quere. If he had not the right to decline answering, whether he had violated the statute ?)

3. "The Chancellor had a right to dispense with such examination, if in his judgment, the proof by affidavits is sufficient in itself, and of such credit, that a denial by the party accused, under oath, would not countervail the affidavits. *King* v. *Vaughan,* Doug. 516; 4 Bl. Com. 284.

4. We are *not now deliberating* on an appeal from Chancery. We must confine ourselves to the writ of error. The only question is whether the Supreme Court is right; and we have no more power, in this suit, to examine the proceedings which led to the adjudication in Chancery, than the Supreme Court had."

"The last objection to the original commitment is, that it was "until the further order of the court," and therefore it is not definite and terminable, either by efflux of time or the doing of some act of the prisoner."

To this Senator Platt answers, "It is equivalent to saying as in common warrants, until he be delivered by due course of law." "It has been the established usage in all our courts, and in the English courts, distinctly traced back to the year books. But if it be wrong in itself, we have a right to apply the maxim, *communis error facit jus.*"

"The next question is, whether Mr. Justice Spencer had a right to discharge Mr. Yates on *habeas corpus,* from his imprisonment under the attachment of the Court of Chancery."

"I can not perceive any difference between our *habeas corpus* act, and that of Great Britain, in relation to the point now before us. Whether a judge in vacation has any powers

under this statute, other than to bail persons committed for trial, or to keep the peace and answer indictments, is a question which perhaps need not be decided in this cause. There seems, however, strong ground to conclude, that his power "extends only to cases of commitment for such criminal charges as can produce no inconvenience to public justice, by a temporary enlargement of the prisoner; all other causes of unjust imprisonment being left to the *habeas corpus* at common law;" which can only be issued in term, 3 Bl. Com. 137; 10 Mod. 429. It is, however, very clear from the express exceptions in the statute, that a judge *in vacation* has no right to discharge "persons convict, or in execution by legal process."

As to the right of the Chancellor to *re-commit*, he says: "I think Mr. Justice Spencer exceeded his jurisdiction in discharging Mr. Yates, and of course that discharge was unauthorized and void; the right of the Chancellor to re-commit, rests on the same footing as if Mr. Yates had been discharged on the order of any private citizen." "He was equally liable to re-commitment as if he had escaped from prison or been rescued by violence."

"But if I am mistaken in every position which I have laid down, there still remains this solemn and important question; is the defendant responsible in this action, for acts done by him officially and judicially, as Chancellor of the state?

Sergeant Hawkins, (B. 1, C. 7, S. 6,) lays down this general rule, "that the law has freed the judges of all courts of record from all prosecutions whatsoever, except in the parliament, for any thing done by them openly in such courts as judges. The English authorities from the Year Books down to the present day establish and fortify this doctrine, that, where courts of special and limited jurisdiction exceed their rightful powers, the whole proceeding is *coram non judice*, and all concerned in such void proceedings are liable to an action by the party injured. *Case of Marshalsea*, 10 Co. 68; *Terry* v. *Huntingdon*, Hardr. 480. But in the case of *Miller* v. *Seare*, 2 Bl. Rep. 1141, Lord Chief Justice De Grey said, "that the judges of the courts of general jurisdiction were not liable to answer personally for their errors in judgment. The protection to them is absolute and uni-

versal; with respect to the inferior courts it is only while they act within their jurisdiction."

"The 5th section of the *habeas corpus* act, gives a penalty against "*any person* who shall knowingly, contrary to this act, re-commit or imprison for the same offence, or pretended offence, any person so set at large."

"I consider this section as having no application to the *Chancellor* or *judges* in their judicial character. This penalty applies only to magistrates, and others who act *ministerially* as conservators of the peace, or who commit for trial, or to answer indictments."

"If the penalty for re-committing applies to the Chancellor while sitting as a Court of Chancery, it must equally apply to all the judges of the Supreme Court sitting together in term; and if the penalty be incurred by the Supreme Court composed of five judges, how are they to be sued, jointly or severally? If the judges or a majority of them are liable to be sued as a court, before what tribunal are they to be sued? If in the courts of Common Pleas, do the parties lose the benefit of a writ of error to the Supreme Court? Or are the judges to sit in judgment on themselves? The absurd consequences evince that, *as courts*, they were never intended to the party in a private suit. Consider them liable in their ministerial capacity only, and the construction of this statute accords with the established and revered principles of the common law."

"My opinion is, that the judgment of the Supreme Court ought to be affirmed."

"Paris, senator, concurred *with this opinion;* eleven other senators were also of opinion," says the reporter, "that the judgment of the Supreme Court ought to be *affirmed,* but did not state their reasons. For *aff.* 14, for *reversal* 5.

Clinton, senator, delivered an opinion in favor of reversal, in which he protests warmly against the Court of Errors, reviewing its own previous decision in *Yates* v. *The People,* and maintains that "when a decision has been pronounced here, the law is established, and no power could change it but the legislature," as he had maintained in the case of *Hartshorne v. Sleight,* 3 J. R. 562. After endeavoring to show that the decision in *Yates* v. *The People,* had settled

the question of the legality of the discharge and the illegality of the imprisonment and re-commitment, he says :

" But it is maintained that admitting the illegality of the imprisonment, yet the Chancellor acting as a court, is irresponsible, particularly to private prosecutions or indictments." This proposition he endeavors to overturn by a critique upon the decisions of Kent, Ch. J., and of the cases cited by him.

Lastly as to whether the Chancellor acted within his jurisdiction ; he maintains that the statutory inhibition as to re-commitment, after discharge on *habeas corpus*, extends to courts ; and that this case did not fall within one of the exceptions, as contended by the plaintiff in error.

Judgment was affirmed with *double costs* to the defendant in error.

---

The marginal note to this case, by the reporter, states as decided by the court, the following points :

1. " That the Chancellor was not liable to an action at the suit of the plaintiff for the penalty given by the 5th section of the *habeas corpus* act, for the re-commitment.

2. That a judge of a court of record is not liable to answer personally, in a civil suit, for any act done by him in his judicial capacity, nor for errors of judgment.

3. That the commitment though specifying an offence " *contrary to the statute,* in such case," &c., and ordering him to be committed to jail until the further order of the court, was a legal commitment for a *contempt ;* the words " contrary to the statute," &c., being surplusage ; and that a judge of the Supreme Court, could not, on *habeas corpus,* discharge the person so committed from his imprisonment.

4. That the Court of Chancery may, in its discretion, commit for a contempt, on the affidavit of witnesses only, without first putting the party to answer on interrogatories.

5. That a commitment for an indefinite time, or " until the further order of the court," is good.

6. Whether a judge of the Supreme Court, in vacation, has any power, under the *habeas corpus* act, other than to bail persons committed for trial, or to keep the peace and answer indictments ? *Dubitatur.* He has no power

to discharge a person committed by order of the Court of Chancery, on a conviction for a contempt of that court; and if he so discharge him, the party may again, by an order of the Court of Chancery, reciting the original writ or attachment, be legally re-committed.

Semble. That the Supreme Court itself can not discharge in such a case.

---

☞ Although the *habeas corpus* act of the Rev. Stat. of 1830, has made important additions and amendments to the act of 1812, under which the foregoing suit was instituted, it is conceived that some of the principles and doctrines discussed and decided in *Yates* v. *The People*, and *Yates* v. *Lansing*, are applicable to many cases which may still arise both under the statute of 1830, in relation to "contempts," as well as under the *habeas corpus* act. See as to "contempts," 2 Rev. Stat. 207, 208, (1st Ed.,) § 10–15.

Also, as to the most material alterations in *habeas corpus* act, so far as relates to the foregoing cases, 2 Rev. Stat. 568, (1st Ed.) § 42, 59–61, most of the new provisions of which appear to be affirmative of the principles of the decision of the Court of Errors, in *Yates* v. *The People ;* and expressly giving the action against the *members of the court* who should re-commit any person discharged on *habeas corpus*, except as provided for in § 61 of the act. Some of the difficulties suggested in the opinion of Senator Platt, would undoubtedly be encountered in such a suit against the judges of the Supreme Court, where all concurred in the re-commitment. Others of them appear to be quite unfounded.